**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **DANNY R. JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 3:15-1006** |
| ) | **Judge Richardson/Brown** |
| **THOMAS J. VILSACK, Secretary, United** ) | |
| **States Department of Agriculture,** ) | |
| ) | |
| **Defendant.** ) | |

**To: The Honorable Eli J. Richardson, United States District Judge.**

**REPORT AND RECOMMENDATION (R&R)**

The Magistrate Judge **RECOMMENDS** for the reasons explained below that: **1)** defendant's

motion for summary judgment (Doc. 98) be **GRANTED**; **2)** this case be **DISMISSED WITH**

**PREJUDICE**; **3)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this

action.

## I.  STATEMENT OF THE CASE

Plaintiff brought this action *pro se* against the United States Department of Agriculture

(defendant or the Agency) on September 18, 2015 "pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. Section 2000e *et seq.*, and the Civil Rights Act of 1991 as amended."  (Doc. 1, p.

1 of 5)[1]  Plaintiff filed a second amended complaint *pro se* on April 6, 2017 (amended complaint)[2]

in which he alleges that defendant violated his rights under "Title VII of the Civil Rights Act of

1964, 42 U.S.C. 2000e *et seq*., the Civil Rights Act of 1991, and the Rehabilitation Act of 1973 [the

---

[1]  The page numbers referred to herein are those assigned by CMECF in the docket entry to which
reference is made.

[2]  Plaintiff filed the amended complaint *pro se*.  Attorney Mark Scruggs filed a notice of appearance
on September 20, 2017.  (Doc. 63) Attorney Scruggs withdrew from the case on March 21, 2018.  (Doc. 75)
Thereafter, attorney Maureen Holland filed a notice of appearance on July 19, 2018.  (Doc. 92)  Neither
attorney amended plaintiff's amended complaint.

Rehabilitation Act], 29 U.S.C. 791, et seq." (Doc. 51, ¶¶ I.1, II.2, pp 1-2 of 22) More particularly, the amended complaint alleges "retaliatory discrimination based on race, disability, and for engaging in protected EEO [equal employment opportunity] activities." (Doc. 51 ¶¶ I.1, VI-VII, pp. 1, 12-19 of 22)

Defendant filed a motion for summary judgment on September 28, 2018. (Docs. 98, 100, 104) Plaintiff responded on November 16, 2018 (Doc. 107), and defendant replied on December 14, 2018 (Doc. 112). On February 15, 2019, the District Judge entered the following order: "Pending before the Court is Defendant's Motion for Summery Judgment. (Doc. No. 98) Pursuant to 28 U.S.C. § 636(b)(1)(B), this Motion for Summary Judgment is referred to the Magistrate Judge for a Report and Recommendation." (Doc. 117)

## II. FACTUAL BACKGROUND

Plaintiff was employed by the National Resources Conservation Service (NRCS), USDA, as a Geographical Information Specialist (GIS) – GS-047-09 – in the NRCS Murfreesboro office (the Murfreesboro office) at the time of the alleged initial events that gave rise to this action. (Doc. 51, ¶ I.1, p. 2 of 22) Plaintiff alleges in his amended complaint that NRCS "subjected him to retaliatory discrimination based on race, disability, and for engaging in protected EEO activities." (Doc. 51, ¶ I.1, p. 1 of 22) The facts underlying this action are as follows.

Lori Pittman (Pittman), a co-worker in the Murfreesboro office, reported on September 12, 2005 that plaintiff exposed himself to her in the workplace earlier that day. (Doc. 104, Ex. 1, pp 20-22 of 27) Both plaintiff and Pittman were placed on administrative leave, plaintiff returning to work on September 15 and Pittman on September 19. (Doc. 41,[3] Ex. 14, p . 110 of 117 [p. 4];[4] Doc. 104,

_____

[3] Plaintiff asserts in his amended complaint that he is "filing an amended complaint that is complete and in a single document . . . ." (Doc. 51, p. 1 of 22) However, the exhibits attached to his amended complaint (Doc. 51) begin with Exhibit 16. Exhibits 1 through 15 are attached to Doc. 41, an earlier amended

Ex.. 1, pp. 8-9, 14, 24 of 27, Ex. 5, p. 5 of 27)  Susan Hopkins, NRCS State Administrative Officer, arranged for a misconduct investigation.[5]  (Doc. 41, Ex. 14, p. 111 of 117 [pp. 5-6]; Doc. 104, Ex. 1, p. 16 of 27; Ex. 5, p. 5 of 27)  Hopkins also requested that plaintiff's office computer be sent to "Washington to see if there was any evidence of misconduct, (pornography)."  (Doc. 41, Ex. 14, p. 111 of 117 [pp. 6-7]; Doc. 104, Ex. 1, pp. 15-16 of 27; Ex. 5, p. 5 of 27)

Hopkins informed plaintiff on October 13, 2005 that the evidence from Connelly's investigation was "inconclusive" and that "no corrective action [w]as warranted."  (Doc. 41, Ex. 1, p. 12 of 117; Doc. 104, Ex. 1, p. 24 of 27)  Michael Sheaver, USDA-NRCS Information System Security Program Manager, advised Hopkins on October 27, 2005 that there was "no evidence of pornography" on plaintiff's computer, or anything "out of the ordinary, except . . . a high number of visits to www.mikesrebuildables.com."  (Doc. 41, Ex. 2, p. 14 of 117)(underline in the original) Hopkins notified plaintiff of these findings on November 3, 2005.  (Doc. 41, Ex. 3, p. 16 of 117; Doc. 104, Ex. 5, p. 5 of 27)  Thereafter, both plaintiff and Pittman continued to work in the Murfreesboro office until March 2006.  (Doc. 51, ¶ IV.15, p. 5 of 22; Doc. 104, Ex. 4, p. 7 of 16)

Although no action was taken against him, plaintiff contacted an EEO counselor on October 27, 2005 following which, on February 2, 2006, he filed an Equal Employment Opportunity Commission (EEOC) complaint – **NRCS 2006-00103** – in which he alleged that he was:

> discriminated against and/or subjected to harassment on the bases of his race (African American) and/or retaliation (prior protected

---

complaint filed on September 2, 2016.  Reference to Doc. 41 in this R&R is necessary to address the amended complaint in its totality.

[4]  The transcript referred to here is in the form of four pages of transcript per one page of the record. The notation in brackets, *i.e.*,  [p. 4], refers to p. 4 of the four-page transcript.

[5]  Robert G. Connelly, Jr. was assigned to conduct an internal investigation of Pittman's allegation. (Doc. 104, Ex. 3, pp. 3-5 of 15)

activity) when . . . management disclosed negative information and false documents regarding him . . . he was denied a reasonable accommodation (i.e., reassignment to another area) . . . his work production and performance . . . [was] . . . impeded due to a fragmented workstation . . . his reputation was damaged when he was accused of sexual misconduct by an employee, investigated and denied access to the investigative report . . . he missed training [during the period September 19-22, 2005] due to the work environment . . . .

(Doc. 41, Ex. 6, p. 71 of 117)[6]

The following month, on March 10, 2006, plaintiff filed a civil action in Tennessee state court against Pittman for slander. *See Jones v. United States*, 3:06-00228, M.D. Tenn., Apr. 10, 2007 (Trauger J.)(Doc. 15, p. 1 of 11). Process issued to plaintiff four days later on March 14, 2006. *Jones*, 3:06-00228 (Doc. 1, p. 3 of 3).[7] Pittman contacted an EEO counselor in Washington on or about March 16, 2006, two days after she received the subpoena in plaintiff's slander action against her.[8] (Doc. 41, Ex. 10, ¶ 36, p. 95 of 117; Doc. 104, Ex. 1, pp. 4, 22 of 27; Ex. 3, pp. 2, 13 of 15; Doc. 106, Ex. F, p. 3 of 5)

Hopkins was informed of Pittman's EEO action shortly after the fact by the "civil rights division in Washington" following which she and James Ford, NRCS State Conservationist, discussed the matter with the Civil Rights Director and Branch Chief of the Employment Complaints

---

[6] Contract EEO investigator Elizabeth Christie was retained to investigate plaintiff's claims. The Agency provided plaintiff with a copy of Christie's report of investigation (ROI) in May 2006 and advised him of his right to request a hearing before an EEOC Administrative Judge (AJ). *Jones, complainant v. Vilsack*, 2010 WL 2474767 at * 3 (EEOC June 9, 2010); *** *Complainant v. Vilsack*, 2015 WL 3955330 at * 2 (EEOC June 19, 2015); (Doc. 104, Ex. 5 p. 2 of 27).

[7] The case was removed to district court on March 23, 2006. *Jones*, 3:06-00228 (Doc. 1). On April 5, 2006, the *United States* was substituted as the defendant and Pittman was dismissed as a party. *Jones*, 3:06-00228 (Docs. 26-27). The case was dismissed on April 20, 2006. *Jones*, 3:06-00228 (Docs. 27, 31).

[8] Pittman testified later in her April 26, 2018 deposition that she contacted the EEO counselor because of plaintiff's slander action against her. (Doc. 104, Ex. 4, pp. 8-10 of 16)

4

Branch, both of whom recommended that plaintiff be moved from the Murfreesboro office and another investigation conducted.[9]  (Doc. 41, Ex. 14, p. 112 of 117 [pp. 9-12]; Doc. 104, Ex. 1, p. 16 of 27)

Ford advised plaintiff on March 28, 2006 that Pittman had named him as the "harasser" in her "allegation of sexual harassment and hostile work environment," and that "an investigation . . . by an independent contractor" had been ordered.  (Doc. 41, Ex. 5, p. 68 of 117)  Ford also notified plaintiff that he was being reassigned to the NRCS State Office in Nashville (the Nashville office), that he was to start working there on April 4, 2006, but that the "reassignment [wa]s considered temporary, pending the outcome of the inquiry."  (Doc. 41, Ex. 5, p. 68 of 117)  Thereafter, plaintiff moved to amend NRCS-2006-00103 in March 2006 to add a sixth claim, *i.e.*, that:

> . . . NRCS . . . subjected him to discrimination based on reprisal for prior . . . EEO . . . activity when on March 16, 2006, the Agency retaliated against him by encouraging a coworker to accuse him of sexual harassment a second time, which resulted in a second investigation and his (temporary) involuntary reassignment to the Agency's Nashville office in April 2006.

(Doc. 41, Ex. 6, p. 70-71 of 117; Doc. 104, Ex. 5, p. 2 of 27)  Wooten subsequently reported that, although "the specific inappropriate behavior displayed by Mr. Jones . . . cannot be corroborated . . . [his behavior is] . . . deemed credible by the totality of the evidence and the allegation of **inappropriate conduct of a sexual nature by Danny Jones is sustained.**"[10]  (Doc. 104, Ex. 3, p.

---

[9]  Independent contractor investigator Normal Wooten was retained to investigate Pittman's allegations.  (Doc. 104, Ex. 3, p. 6 of 15)

[10]  Plaintiff requested an EEOC hearing on NRCS-2006-00103 on June 21, 2006 which was held on May 18, 2007.  (Doc. 104, Ex. 5, pp. 2-3 of 27)  "On May 11, 2007, the EEOC AJ granted partial summary judgment, dismissing the basis of race on the grounds . . . that [plaintiff] could not make a *prima facie* showing of race discrimination under either a disparate treatment or hostile environment analysis . . . [and plaintiff] did not appeal this decision . . . ."  (Doc. 104, Ex. 5, pp. 2-3 of 27)  Plaintiff's sixth claim for retaliation was remanded for "supplemental investigation."  *Jones, Complainant*, 2010 WL 2474767 at ** 6-7.  Thereafter, on April 18, 2007, the AJ "held a full evidentiary hearing with respect to [plaintiff's]

On or about October 2006, during his temporary assignment to the Nashville office, plaintiff made a verbal request to Ford for a "reasonable accommodation" to work from home due to alleged depression, paranoia and anxiety. (Doc. 104, Ex. 2, pp. 2-3, 6, 12, 20 of 35) Cliff Denshire, National Disability Program Manager, telephoned Hopkins on January 24, 2007 inquiring into the status of plaintiff's "reasonable accommodation" request about which plaintiff had called him earlier. (Doc. 104, Ex. 2, p. 20 of 35) In an email dated January 24, 2007, Hopkins advised Denshire that Plaintiff's supervisor, Vic Simpson, was unaware of the request.[11] (Doc. 104, Ex. 2, p. 12 of 35)

Hopkins met plaintiff later that same day at which time plaintiff provided her with a letter from his treating physician, Dr. Ahmed Farooque, M.D., dated November 28, 2006. (Doc. 104, Ex. 2, pp. 11-12 of 35) Hopkins also notified plaintiff later that same day, *i.e.*, January 24, 2007, that Denshire had determined "Dr. Farooque's letter did . . . not provide enough other job-related information for the Agency to make a determination." (Doc. 104, Ex. 2, p. 13 of 35) Hopkins directed plaintiff in writing to have Dr. Farooque provide the additional information requested directly to Denshire. (Doc. 104, Ex. 2, pp. 13-14 of 35)

Plaintiff notified Denshire by email on March 5, 2007 that the requested information was not yet available, to which Denshire replied, "[p]lease have the information to me by COB March 16,

retaliation claim" and issued a decision on September 6, 2007 finding that plaintiff "failed to prove that he was subjected to the discrimination . . . alleged." *Jones, Complainant*, 2010 WL 2474767 at * 3. Plaintiff again did not appeal the AJ's decision regarding his race-based claims. *Jones, Complainant*, 2010 WL 2474767 at * 2 n. 2. The Agency issued a final order on October 15, 2007 adopting the AJ's findings. *Jones, Complainant*, 2010 WL 2474767 at * 3. The Final Agency Decision (FAD) was not issued until September 26, 2013. (Doc. 104, Ex.5) Plaintiff appealed the FAD on November 2, 2012. ***, *Complainant*, 2015 WL 3955330. Again, he did not appeal the AJ's decision based on race. (Doc. 104, Ex. 5, p. 3 of 27); *see* ***, *Complainant*, 2015 WL 3955330 at * 2 n. 1.

[11] Ford retired in January 2007. (Doc. 104, Ex. 2, p. 12 of 35; Doc. 106 Ex. 12, p. 6 of 8)

2007." (Doc. 104, Ex. 2, p. 24 of 35) Joseph Hairston, Director of the Agency's Civil Rights Division, recommended on April 4, 2007 that plaintiff's request be denied after he still had not provided the required information. (Doc. 104, Ex. 2, p. 23 of 35) Denshire denied plaintiff's reasonable accommodation request on April 9, 2007. (Doc. 104, Ex. 2, pp. 23-24 of 35)

On April 12, 2007, plaintiff asked that his request be reconsidered when the medical information became available. (Doc. 104, Ex. 2, p. 24 of 35) The required information was submitted to Denshire on July 16, 2007, pursuant to which it was determined on July 24, 2007 that plaintiff was disabled under the Americans With Disabilities Act (ADA). (Doc. 104, Ex. 2, pp. 25-27 of 35) The Agency recommended approval of plaintiff's request for accommodation on September 11, 2007 (Doc. 104, Ex. 2, p. 28 of 35), and plaintiff began to work from home two days a week on October 30, 2007 after the necessary additional computer equipment was obtained by "[r]ush order." (Doc. 104, Ex. 2, pp. 34-35 of 35)

On September 24, 2007, while plaintiff still was on temporary assignment to the Nashville office, the Agency posted a vacancy for a Career Enhancement Program (CEP). (Doc. 104, Ex. 2, pp. 31-32 of 35) The CEP was "designed to improve opportunities for employees at lower grade levels." (Doc. 104, Ex. 2, p. 32 of 35) Plaintiff's application was denied on October 16, 2007 because he did "not meet the basic eligibility requirements . . . ." (Doc. 104, Ex. 2, p. 33 of 35)

Brown notified plaintiff in writing on October 9, 2007 that he was being reassigned to the Nashville office permanently effective October 28, 2007.[12] (Doc. 104, Ex. 2, p. 30 of 35) Affidavits

---

[12] The Notification of Personnel Action associated with the permanent reassignment dated October 1, 2007 shows that plaintiff was reassigned from a position of "SOIL CONSVST JC TN5555 . . . Position: 00TN5555" in the Murfreesboro office to "SOIL CONSVST JC: TN5555 . . . . Position: 00TN5555" in the Nashville office with no changes in pay plan, code, grade or level, step, salary, or pay basis. (Doc. 106, Ex. D) On December 17, 2008, Brown confirmed plaintiff's reassignment as a "reassignment from [the] position as Soil Conservationist, GS-0457-9, GIS Staff to the position of Soil Conservationist, GS-457-9, on the Ecological Sciences Staff in Nashville . . . ." (Doc. 104, Ex. 12, p. 5 of 6)

executed later by Brown and Hopkins show that plaintiff's assignment was made permanent because the computers and other tools he need to perform his job were in the Nashville office, and because Wooten's investigation recommended he and Pittman not work in the same office. (Doc. 104, Ex. 2, pp. 9-10 of 35)

Plaintiff filed a second EEO complaint on March 1, **2008 – NRCS 2008-0132** – alleging that "the Agency discriminated against him on the bases of race (African American), sex (male), and disability (depression/anxiety) when from October 4, 2007 through January 23, 2008 . . . [h]e learned that he was permanently reassigned to the Tennessee State Office . . . [h]e learned that he was held in a temporary reassignment status for 18 months . . . [h]e was denied an opportunity to participate in a career enhancement program . . . and [h]is request for a reasonable accommodation was delayed."[13] (Doc. 104, Ex. 2, pp. 2-4 of 35)

On May 6, 2008, plaintiff's then-supervisor Jeff Sanders, advised plaintiff that he was going to have to move from the engineering area where he worked after he was assigned temporarily to the Nashville office, to the Ecological Sciences area with the rest of the Ecological Sciences staff of which plaintiff was a part. (Doc. 104, Ex. 8 pp. 7-8 of 29) In response, plaintiff advised Sanders that he required a quiet workspace with a window because of his medical condition but that those in the Ecological Sciences area provided neither. (Doc. 104, Ex. 8, pp. 6, 8-9, 11, 13 of 29) The evidence shows that plaintiff did not have any medical evidence that he required a window, nor did the documentation provided in connection with the original reasonable accommodation request – discussed above at pp. 6-7 – state that he did. (Doc. 51, Ex. 20-22; Doc. 104, Ex. 8, pp. 9, 22 of 29)

---

[13] A copy of the ROI in NRCS 2008-00132 and notice of his right to request a hearing before an EEOC AJ were provided to plaintiff at the conclusion of the investigation into his claims. ***, *Complainant v. Vilsack*, 2015 WL 3955094 at * 2 (EEOC June 19, 2015). Thereafter, plaintiff requested a hearing before an AJ. ***, *Complainant*, 2015 WL 3955094 at * 2. However, the AJ granted the Agency's motion for summary judgment without a hearing on September 2, 2014. ***, *Complainant*, 2015 WL 3955094 at * 2. The EEOC affirmed the Agency's decision on June 19, 2015. ***, *Complainant*, 2015 WL 3955094 at * 4.

8

In a June 3, 2008 email to plaintiff, Sanders advised plaintiff that, although there were no cubicles with a window presently available in the Ecological Sciences area, he would "keep that option open should a cubicle with a window become available." (Doc. 104, Ex. 8, p. 7 of 29) Plaintiff was moved on June 24, 2008. (Doc. 104, Ex. 8, p. 9 of 29) Sanders learned in September 2008 that a cubicle with a window in the Ecological Sciences area would become available in October. (Doc. 104, Ex. 8, p. 22 of 29) Plaintiff was moved to that cubicle when it was vacated. (Doc. 104, Ex. 8, p. 22 of 29)

On June 9, 2008, after moving to the Ecological Sciences area, plaintiff asked Sanders to provide him with acoustic noise canceling headphones to permit him to concentrate better. (Doc. 104, Ex. 8, p. 6 of 29) Sanders denied plaintiff's specific request for "Bose noise cancelling headphones" because they were "the highest priced headphones on the market," they were "a noise elimination device" that would interfere with his ability to do his job, they were inconsistent with the "initial intent . . . for [plaintiff] to have a telephone headset," and because they served "only to eliminate noise and permit listening to music and other audio media." (Doc. 104, Ex. 8, p. 10 of 29) Sanders advised plaintiff that he would approve an alternate headset if plaintiff wished to proceed with his request. (Doc. 104, Ex. 8, p. 10 of 29)

Plaintiff sent Sanders an email on July 16, 2008 that read, "I need to flex this morning. 9:30-6:00 p.m. [T]hanks." (Doc. 104, Ex. 8, p. 27 of 29) Sanders replied, "I take it this is a request? Okay." (Doc. 104, Ex. 8, p. 27 of 29) Sanders wrote a memorandum on July 30, 2008 memorializing a conversation with plaintiff concerning an incident the prior day when plaintiff clocked out early without permission while working from home. (Doc. 104, Ex. 8, p. 28of 29) Sanders instructed plaintiff "to be sure it did not happen again." (Doc. 104, Ex. 8, p. 28 of 29)

Plaintiff sent an email to Sanders on August 4, 2008 that read, "I will only be able to work

9

4 hrs. today (p.m.). Thanks." (Doc. 104, Ex. 8, p. 16 of 19) Sanders replied, "I don't have a problem with that, but you need to provide more information. Why will you only be able to work 4 hours today?" (Doc. 104, Ex. 8, p. 16 of 29) Sanders added later that afternoon, "You need to follow our policy, and you need to be clear in your requests for . . . flexing your schedule. If you refuse to do so in the future I will consider you to be absent without approved leave." (Doc. 104, Ex. 8, p. 29 of 29) Plaintiff complied thereafter and no action was taken against him. (Doc. 104, Ex. 8, pp. 23-24 of 29)

In an August 22, 2008 memorandum from Sanders to plaintiff captioned "Follow-Up to Conversation with Danny Jones," Sanders wrote the following in connection with a conversation Sanders and plaintiff had earlier that same day:

> This is a follow-up to insure that you are clear about our discussion. First, you are to cease any further efforts or attempts in trying to keep track of other employees' schedules; where they are, what time they come in, when they go to lunch, etc. . . . Second, you are to remove the large photo of the African American boy standing at a water fountain next to a sign titled 'Colored'. I consider this to be a racially divisive picture based on comments from others and I have had a complaint from an employee who found it offensive. . . . Focus your time and efforts on creating a more positive work environment.

(Doc. 104, Ex. 8, pp. 18-19, 25 of 29)

Plaintiff filed a third EEOC complaint on August 23, 2008 – **NRCS 2008-00817** – in which he alleged that, since June 30, 2008, Sanders had "denied his . . . request for a reasonable accommodation . . . [and] . . . his request for reconsideration," "scrutinized his time and attendance to include issuing him a Letter of Instruction for leave abuse and threatening him with being placed on Absent Without Leave," "falsely accused him of monitoring employees and being divisive in the workplace," and "tried to intimidate him regarding his participation in the EEO complaint

process."[14]  (Doc. 104, Ex. 8, pp. 3, 5 of 29; Ex. 11, p. 2 of 18)

Plaintiff filed a fourth EEOC complaint on February 20, 2009 – **NRCS-2009-00210** – in which he alleged that Sanders "reassigned [him] from his position of GIS Specialist to the position of Soil Conservationist . . . [and] . . . removed [him] from his position and reassigned Caucasian female Lori Pittman to [his] position."[15]  (Doc. 51, Ex. 17, p. 2 of 15; Doc. 104, Ex. 12, p. 2 of 6) The complaint accepted by the Agency for review was as follows:

> Whether the . . . agency . . . subjected . . . [him] . . . to discrimination based on race (African American) and reprisal (prior EEO activity), when management on October 26, 2006, replaced and reassigned him from his position of Geographical Information System Specialist . . . GS-0457-09, in the Murfreesboro Field Office, to a position of Soil Conservationist, GS-0457-09 in the Tennessee State Office.

(Doc. 51, Ex. 17, p. 2 of 15; Doc. 104, Ex. 12, p. 3 of 6)[16]  The crux of plaintiff's claim is that he allegedly was deemed not qualified for the position at issue because he did not have a BS degree in Geography or Geology, whereas two Caucasians were permitted to retain the position despite the fact that they did not have the required degree.

### III.  ANALYSIS

---

[14]  Receipt of NRCS-2008-00817 was acknowledged by letter dated September 29, 2008.  (Doc. 104, Ex. 8, p. 5 of 29; Ex. 11, p. 3 of 18) Plaintiff requested an EEOC hearing on March 2, 2009 and a ROI issued on March 11, 2009.  (Doc. 104, Ex. 11, p. 3 of 18)  On September 14, 2016, plaintiff submitted a written request for a FAD to the EEOC AJ, following which, on September 19, 2016, the EEOC AJ dismissed plaintiff's complaint and a FAD was issued on the merits on December 20, 2016.  (Doc. 51, Ex. 16; Doc. 104, Ex. 11, pp. 3, 17 of 18)

[15]  The Agency noted the following in a foot note to the FAD: "Complainant stated that the issue as written is incorrect as he had been transferred from the Murfreesboro office to the Nashville office in October 2007."  (Doc. 51, Ex. 17, p. 2 of 15)  In other words, the actions alleged did not involve Pittman.

[16]  A copy of the ROI was issued to plaintiff on July 7, 2009 and plaintiff requested an EEOC hearing before an AJ on July 17, 2009.  (Doc. 51, Ex. 17, p. 2 of 15)  The EEOC AJ ordered the Agency to issue a FAD on the matter on September 19, 2016.  (Doc. 51, Ex. 17, p. 2 of 15; Doc. 104, Ex. 10, p. 2 of 10)  The FAD was issued on February 1, 2017.  (Doc. 51, Ex. 17, p. 2 of 15)

11

## A. Motion For Summary Judgment

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. AT&T Mobility Services LLC*, 847 F.3d 384, 391 (6th Cir. 2017). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50; *Stiles ex rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine issue of material fact, then summary judgment should be denied. *Sowards*, 203 F.3d at 431. However, "[t]he moving party need not support its motion with evidence; instead, it only must point out the deficiencies in the nonmoving party's case." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 507 (6th Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 324-25).

"'Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint.'" *Jones v. City of Franklin, et al.*,

677 Fed.Appx. 279, 282 (6th Cir. 2017)(citation omitted). "[T]o withstand a properly supported motion for summary judgment, plaintiff must do more than rely merely on the allegations of h[is] pleadings or identify a 'metaphysical doubt' of hypothetical 'plausibility' based on a lack of evidence; [h]e is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." Rule 56(c), Fed. R. Civ. P.; *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009)(citing *Matsushita Elec.*, 475 U.S. at 586-87). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Jones*, 677 Fed.Appx. 282 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). In other words, to defeat a motion for summary judgment, the party opposing the motion must present affirmative evidence to support his position; a mere scintilla of evidence is insufficient. *See Brown v. Battle Creek Police Department*, 844 F.3d 556, 565 (6th Cir. 2016); *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003)(citing *Anderson*, 477 U.S. at 252).

## B.  Claims Under Title VII

Title VII prohibits an employer from discriminating against any individual with respect to h[is] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1), (m); *see University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 342, 347 (2013).  Where, as here, a plaintiff relies on circumstantial evidence, Title VII's antidiscrimination provisions are subject to burden-shifting framework first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and modified in *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981).  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)(citation omitted). Under this framework, plaintiff bears the initial burden of establishing a *prima facie* case of

13

discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 253. If a plaintiff makes the required initial *prima facie* showing, then the burden shifts to the defendant to provide evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 802. If the defendant succeeds in showing that it had a legitimate, non-discriminatory reason for the adverse employment action, then the burden shifts back to the plaintiff to show that the defendant's explanation was a mere pretext for discrimination. *Burdine*, 450 U.S. at 253. To make a showing of pretext, "the plaintiff must produce sufficient evidence from which [a] jury may reasonably reject the employer's explanation." *Hardesty v. Kroger Company*, 758 Fed.Appx. 490, 493 (6th Cir. 2019)(citation omitted).

## C. Exhaustion

Exhaustion of administrative remedies is a precondition to filing a Title VII lawsuit. *See Green v. Brennan*, __ U.S. __, 136 S.Ct. 1769, 1775 (2016); *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002). To exhaust his administrative remedies a federal employee must: consult with an EEO counselor within forty-five days of the alleged discriminatory incident, *Green*, 136 S.Ct. At 1775 (quoting 29 C.F.R. § 1614.105(a)(1)), file a complaint of discrimination with the alleged discriminating agency, 29 C.F.R. § 1614.106(a), and receive a final agency decision, 29 C.F.R. § 1614.110(a). After the employee receives the final agency decision, he either may file a discretionary appeal with the EEOC, 29 C.F.R. § 1614.401(a), within thirty days, 29 C.F.R. § 1614.402(a), or he may file suit in federal court within ninety days, 29 C.F.R. § 1614.407(a). If the employee proceeds in the EEOC, he may bring a federal suit within 180 days of filing either his initial complaint or his appeal in the EEOC. 29 C.F.R. § 1614.407(a)-(d). In short, only those claims that plaintiff raised in his four charges of discrimination are properly before the court, and then only if he exhausted his administrative remedies with respect to those claims. Those claims

14

before the court not addressed in his various charges of discrimination are barred for failure to exhaust. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2010).

### D.  Plaintiff's Claims[17]

### 1.  Claims Raised in NRCS 2006-00103

As discussed above at pp. 3-4, plaintiff alleged race discrimination and retaliation in his February 2, 2006 EEOC filing, NRCS 2006-00103, adding a second claim of retaliation and one of reprisal in his March 2006 amendment, addressed above at p. 5.  A careful reading of the amended complaint reveals that, of the claims NRCS 2006-00103, only the one in plaintiff's March 2006 amendment is before the court, *i.e.*, plaintiff's reprisal and second retaliation claims linked to Pittman's EEO complaint.

Turning first to race, as discussed above at pp. 5-6 n. 10, plaintiff did not exhaust his administrative remedies as to his race-based claims in NRCS 2006-00103.  Because plaintiff did not exhaust those claims, they are not properly before the court and should be dismissed *sua sponte*.

Turning to plaintiff's retaliation claim, to make a *prima facie* showing of retaliation, plaintiff must establish that: 1) he engaged in a protected activity; 2) defendant knew of that protected activity; 3) defendant took an employment action that was materially adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the materially adverse action. *Hubbell v. FedEx. SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019)(citations omitted).  The *McDonnell Douglas-Burdine* burden shifting framework applies if the plaintiff makes a *prima facie* showing of retaliation.  *Hubbell*, 933 F.3d at 568 (citations omitted).

---

[17]  Plaintiff characterizes his claims as *Causes of Action*.  (Doc. 51, ¶¶ VI-VIII, pp. 12-19 of 22)  Defendant argues his motion for summary judgement in the context of plaintiff's four EEOC claims, as does plaintiff in his response to the motion for summary judgment.  The undersigned conforms his analysis to the convention adopted by the parties for the sake of continuity.

The undersigned assumes for the sake of the following analysis that plaintiff satisfies the elements enumerated 1) through 3) in the paragraph above, assuming without deciding that the second investigation and plaintiff's subsequent temporary reassignment to the Nashville office constituted adverse employment actions. To establish a "causal connection" under the facts alleged, plaintiff must show that his temporary reassignment and the second investigation were due to the Agency acting through Pittman to retaliate against him for his prior EEO actions.

As previously discussed above at pp. 4 n. 8, Pittman testified that she contacted the EEO counselor in Washington when she learned that plaintiff was suing her for slander. The veracity of Pittman's testimony is supported by the evidence. First, Pittman and plaintiff worked together at the Murfreesboro office for 6-plus months after the September 2005 incident, during which period Pittman did not seek to take any further action against plaintiff. Second, having worked with plaintiff at the Murfreesboro office for six months without taking any action against him, Pittman contacted the EEO counselor in Washington in the blink of an eye just two days after she was served in plaintiff's slander action against her.

The evidence above supports the conclusion that plaintiff's temporary reassignment and the second investigation were the dual consequences of Pittman's response to plaintiff's slander action against her, not the result of the Agency retaliating against him through her. Given the evidence, any reasonable juror would find that plaintiff failed to make a *prima facie* showing of retaliation.

The undersigned turns next to plaintiff's reprisal claim. A form of retaliation, the *prima facie* requirements to support a reprisal claim are the same as those for retaliation enumerated on the preceding page. The Supreme Court has determined that "Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker form making or

supporting a charge of discrimination,'" *i.e.*, so-called third party reprisal claims. *Thompson v. North American Stainless (NAS), LP*, 562 U.S. 170, 174 (2011)(quoting *Burlington N. & S.F.R.. Co. v. White*, 584 U.S. 53, 68 (2006)). In *Thompson*, the petitioner, Eric Thompson, and his fiancé, Miriam Regaldo, both worked for NAS. *Thompson*, 562 U.S. at 172. The EEOC notified NAS in February 2003 that Regaldo had filed a charge of discrimination against it. *Thompson*, 562 U.S. at 172. NAS, in turn, fired Thompson three weeks later. *Thompson*, 562 U.S. at 172. Thompson had not "engaged in any statutorily protected activity, either on his own behalf or on behalf of . . . Regaldo . . . ." *Thompson*, 562 U.S. at 172.

The Supreme Court concluded from the facts summarized above that "a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired." *Thompson*, 562 U.S. at 174. Although the Supreme Court "decline[d] to identify a fixed class of relationships for which third-party reprisals are unlawful," it did conclude that "firing a close family member will almost always" qualify, but "inflicting a milder reprisal on a mere acquaintance will almost never do." *Thompson*, 562 U.S. at 175. Reduced to the most basic level, third-party reprisal claims arise where "[h]urting" one employee is "the unlawful act by which the employer punish[es]" another for engaging in a protected activity. *Thompson*, 562 U.S. at 178.

It is not necessary to address the elements required to state a *prima facie* claim of reprisal because the facts alleged do not square with a basic tenets of reprisal theory expressed in *Thompson*. First, there clearly was no close personal relationship between Pittman and plaintiff such as those described in *Thompson*. Second, Pittman would not have been deterred from filing her EEO complaint had she known that plaintiff would be reassigned to the Nashville office and a second investigation conducted into her September 2005 complaint against plaintiff. Simply put, a reprisal

17

claim will not lie based on the evidence before the court.[18]

. . . . .

Defendant's motion for summary judgment should be granted for the reasons explained above as to those claims before the court that arise from NRCS 2006-00103.

## 2. Claims Raised in NRCS 2008-00132

As discussed above at p. 8, plaintiff filed a second EEO complaint on March 1, 2008 – NRCS 2008-0132 – alleging that the Agency discriminated against him on the basis of race, sex, and disability. A close reading of the amended complaint reveals that, of the claims raised in NRCS 2006-00132, only the following are before the court in this action: 1) the circumstances pertaining to his permanent reassignment to the Nashville office; 2) the length of time he was held in his temporary reassignment status; 3) the delay in acting on his request for a reasonable accommodation. Plaintiff alleges that the claims enumerated above also were in retaliation for his prior EEO activity, *i.e.*, his having filed NRCS 2006-00103.[19] Plaintiff did not raise the CEP issue, discussed above at p. 7, either in his amended complaint or in his response to defendant's motion for summary judgment. Therefore, the CEP claim is not before the court.

### a. Claims of Race Discrimination

The evidence reveals that plaintiff exhausted his race-based claims raised in NRCS 2008-00312. ***, *Complainant*, 2015 WL 3955094 at * 2. However, plaintiff provides no factual allegations in his amended complaint to support those claims. Moreover, plaintiff only asserts

---

[18] It cannot be determined from plaintiff's March 2006 amendment to NRCS 2006-00103 whether he was using the terms "retaliation" and "reprisal" interchangeably rather than two separate legal theories. However, the result would be the same because there is no causal connection between the protected activity and the alleged adverse employment action.

[19] The undersigned assumes without deciding that NRCS 2006-00103 is the protected activity at issue inasmuch as it was the only EEO complaint in effect during the relevant period.

18

vaguely in his response to defendant's motion for summary judgment that, because the "onset" of the second investigation and his reassignment "were close in time" to his EEO activity, "a reasonable trier of fact could find that these actions were based upon [his] race or sex (or motivated by these characteristics) and/or were retaliatory"  (Doc. 107, ¶ III.D, p. 14 of 18)

"'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived,'" nor is it "'sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'"  *United States v. Robinson*, 390 F.3d 853, 886 (6th cir. 2004)(citation omitted); *see e.g. Johnson v. Fortune Plastics of Tennessee*, No: 3:14-CV-01310, 2016 WL 6249181 at * 2 n. 3 (M.D. Tenn., Crenshaw, J.)(Title VII claim deemed waived because plaintiff "failed to provide any factual allegations, evidence or argument to support it in the First Amended Complaint or in response to the motion for summary judgment").  Given the dearth of argument in the amended complaint, and the conclusory, speculative and unsubstantiated nature of plaintiff's response to the motion for summary judgment, plaintiff's race-based claims arising from NRCS 2008-0132 are waived and should be dismissed *sua sponte*.

### b.  Plaintiff's Permanent Reassignment to the Nashville Office

Plaintiff alleges that his permanent reassignment to the Nashville office in October 2007 was in retaliation for his prior EEO activity.  The elements necessary to make a *prima facie* showing of retaliation are set forth above at p. 15.  The undersigned assumes for the sake of the following analysis that plaintiff satisfies elements 1), 2) and 3).  As explained below, however, the evidence does not show a causal connection between filing NRCS 2006-00103 and the Agency's decision to reassign him permanently to the Nashville office.

Plaintiff filed NRCS 2006-00103 in February 2, 2006 and amended his complaint in March

2006. Plaintiff was reassigned permanently to the Nashville office on October 28, 2007, 20-plus months after he filed his EEO complaint. The doctrine of temporal proximity mitigates against finding a causal connection between the filing of filing NRCS 2006-00103 and the permanent reassignment given that 20-plus months passed between the two events. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008)(temporal proximity involves short periods of time such as four to six months).

In addition to the foregoing, and as discussed above at pp. 5-8 and n. 10, the evidence shows that plaintiff was reassigned permanently to the Nashville office on October 28, 2007, the month after the EEOC AJ entered her decision on September 6, 2007, and the same month the Agency issued the FAD in the matter on October 15, 2007. In short, the evidence shows that plaintiff's permanent reassignment to the Nashville office was causally connected to the final EEOC and Agency decisions in NRCS 2006-00103, not to his having filed NRCS 2006-00103 20-plus months earlier. Given this evidence, any reasonable juror would find that plaintiff failed to make a *prima facie* showing of retaliation.

### c.  The Length of Plaintiff's Temporary Assignment to the Nashville Office

Plaintiff alleges that the Agency retaliated against him for filing NRCS 2006-00103 by extending the length of his temporary reassignment to the Nashville office. Again, the elements required to make a *prima facie* showing of retaliation are set forth above at p. 15, and again the undersigned spots plaintiff elements 1), 2), and 3). As explained below, however, plaintiff cannot make a causal connection between the protected activity, *i.e.*, filing NRCS 2006-00103, and the alleged adverse employment action, *i.e.,* the length of plaintiff's temporary reassignment to the Nashville office.

The evidence shows that plaintiff filed NRCS 2006-00103 on February 2, 2006. As

20

discussed above at pp.7-8, plaintiff was reassigned permanently to the Nashville office on October 28, 2007, 18-plus months after he filed and amended NRCS 2006-00103. For the reasons explained on the preceding page, the doctrine of temporal proximity mitigates against finding a causal connection between two events so remote in time as these.

Notwithstanding the foregoing, plaintiff linked NRCS 2006-00103 to Pittman's EEO complaint when he amended NRCS 2006-00103 to add a sixth claim. The evidence shows that plaintiff initiated action in the EEOC in NRCS 2006-00103 on June 21, 2006 – the month following the release of Wooten's report – and that he pursued his rights in the EEOC for the next 16-plus months. As noted above at pp. 6-8 and n. 10, the EEOC AJ did not enter her decision in the matter until September 6, 2007 and the Agency did not issue its FAD until October 15, 2007 following which, plaintiff was reassigned permanently to the Nashville office on October 28, 2007.

The evidence above supports the conclusion that the length of time plaintiff was assigned temporarily to the Nashville office was causally connected to the length of time he pursued his rights in the EEOC, not to his having filed NRCS 2006-00103 20-plus months earlier. Given the evidence, any reasonable juror would find that plaintiff failed to make a *prima facie* showing of retaliation.

### d. Plaintiff's Request for Reasonable Accommodation to Work From Home While He was Assigned Temporarily to the Nashville Office

The undersigned turns next to plaintiff's claim that the Agency delayed approving his request for a reasonable accommodation to work from home while he was assigned temporarily to the Nashville office. The Rehabilitation Act constitutes the exclusive remedy for federal employees alleging disability-based discrimination. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)(citing 42 U.S.C. § 12111(5)(B)(I); *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004)).

21

To establish a *prima facie* case of failure to accommodate under the Rehabilitation Act, plaintiff must show that: 1) he was an individual with a handicap; 2) he was qualified for the position; 3) the Agency was aware of his disability; 4) an accommodation was necessary; 5) the Agency failed to provide the necessary accommodation. *Stanciel v. Donahoe*, 570 Fed.Appx. 578, 583 (6th Cir. 2014)(citation omitted).

As discussed above at pp.6-7, the evidence shows that plaintiff was granted reasonable accommodation to work from home in October 2007. Consequently plaintiff cannot make a *prima facie* showing of failure to accommodate.

The undersigned turns next to whether the Agency delayed in approving plaintiff's request for reasonable accommodation in retaliation for his prior EEO actions. The elements to make a *prima facie* case of retaliation are as enumerated above at p. 15. The undersigned assumes for the sake of this analysis that plaintiff has established the first three elements of the required *prima facie* showing. As shown below, however, the evidence does not support a causal connection between the alleged delay in approving his request for reasonable accommodation and his filing of NRCS 2006-00103.

As discussed above at pp. 6-7, the evidence shows that: 1) plaintiff's request for reasonable accommodation as made verbally without written followup; 2) no one in the Agency was aware of plaintiff's request until January 24, 2007; 3) plaintiff failed to provide the necessary medical documentation to Denshire until July 16, 2007, nearly six months after Denshire told him to do so. As discussed above at p. 7, the evidence also shows that plaintiff was determined to be disabled on July 24, 2007, eight days after plaintiff finally provided the required medical information, that the Agency approved his request for accommodation on September 11, 2007, and that plaintiff began to work from home on October 30, 2007 after a delay in procuring the necessary home computer

22

equipment.

The evidence above supports the conclusion that the delay in approving plaintiff's request for accommodation was a problem of plaintiff's own making, not to any retaliatory animus on defendant's part. Consequently, any reasonable juror would find that plaintiff failed to make a *prima facie* showing of retaliation.

. . . . .

Defendant's motion for summary judgment should be granted for the reasons explained above as to those claims before the court that arise from NRCS 2008-00132.

### 3. Claims Raised in NRCS 2008-00817

As discussed above at pp 10-11, plaintiff filed a third EEO complaint on August 23, 2008, *i.e.*, NRCS 2008-00817, four-plus months after his reassignment to the Nashville office had been made permanent. Of the several claims plaintiff raised in NRCS 2008-00817, the only one before the court is plaintiff's claim that his supervisor, Sanders, denied his request for reasonable accommodation when, after his reassignment to the Nashville office had been made permanent, he was instructed to move from the engineering section where he was provided a workspace during his temporary reassignment to the Environmental Sciences for which he actually worked, discussed above at pp. 8-9. Plaintiff alleges that Sanders discriminated "against [him] because of [his] prior EO activities . . . [his] race . . . [a]nd because of [his] disability." (Doc. 51, ¶ VIII.55 p. 17 of 22).

Turning to the claim of race-based discrimination, plaintiff alleges only that "actions were taken against [him] because of [his] . . . race," nothing more. (Doc. 51, ¶¶ VIII.55-60, pp. 17-19 of 22). The issue of race is not mentioned at all in the applicable part of plaintiff's response to the motion for summary judgment (Doc. 107, ¶ III.E, pp. 14-16 of 18). In the absence of any supporting argument, plaintiff's race-based claims arising from NRCS 2008-00817 are waived and should be

23

dismissed *sua sponte*.

Plaintiff's passing mention of alleged discrimination due to his "prior EO activities" is all that he says on this issue in his amended complaint. (Doc. 51, ¶¶ VIII.55-60, pp. 17-19 of 22) In his response to defendant's motion for summary judgment, plaintiff only discusses his original request to work from home that was approved in September 2007, discussed above at 6-7. (Doc. 107, ¶ III.E, pp. 14-16 of 18) Plaintiff mentions nothing at all in his response about his "prior EO activities" raised in NRCS 2008-00817. Absent any supporting argument, plaintiff's EEO-related claims arising from NRCS 2008-00817 are waived and subject to *sua sponte* dismissal.

The undersigned turns to plaintiff's claim that he was discriminated against "because of [his] disability," a claim that the undersigned construes to allege that he was denied a reasonable accommodation when he was directed to move from his temporary work area in engineering to the Environmental Sciences area. There are three elements to plaintiff's failure-to-accommodate claim: 1) he was not provided a cubicle; 2) he was not provided with a noise cancelling headset; 3) he was "force[d] . . . to drive into work during peak rush hour . . . ." (Doc. 51, ¶ VIII.56, p. 17 of 22) The elements required to establish a *prima facie* case of failure to accommodate are enumerated above at p. 22. As shown below, the evidence does not support a *prima facie* showing of failure to accommodate.

The evidence shows that plaintiff has satisfied the first three elements required to make a *prima facie* showing of failure to accommodate, *i.e.*, he had a disability, he was qualified for the position, and the Agency knew he had a disability. However, the evidence does not show that an accommodation was necessary beyond the work-at-home accommodation granted in the previous year in September 2007. More particularly, although he was provided the opportunity to do so, plaintiff did not provide any additional medical evidence that he required a workspace with a

window, that he required noise canceling headphones, or that he was unable to drive to work in Nashville during normal work hours. Nor is there anything in the documentation submitted in support of plaintiff's earlier work-at-home request approved in September 2007 that would support plaintiff's demands. (Doc. 104, Ex. 2, pp. 25-26 of 35) In short, a reasonable juror would conclude from the evidence that plaintiff's demand for accommodation after he was transferred permanently to the Nashville office was based on plaintiff's unsupported opinion of his requirements.

Assuming for the sake of discussion that it were determined on subsequent review that an accommodation were necessary, plaintiff cannot show that he was denied one. The evidence shows that plaintiff's request for a cubicle with a window was granted in October 2008 when the first cubicle in the Ecological Sciences area with a window became available and, although Sanders denied plaintiff's request for Bose noise cancelling headphones, there is no evidence that plaintiff followed up on Sanders' offer to purchase a less expensive headset for him, or that Sanders reneged on his offer. As for allegedly being "forced" to drive to work "during peak rush hour," plaintiff does not provide any factual allegations to assist in the analysis this claim. In any event, plaintiff's work hours and his concomitant commute hours were the subject of the preexisting Accommodation.

For the reasons explained above, any reasonable juror would conclude from the evidence that plaintiff was not denied reasonable accommodation in connection with his directed move to the Environmental Sciences section.

. . . . .

Defendant's motion for summary judgment should be granted for the reasons explained above as to those claims before the court that arise from NRCS 2008-00817.

### 4. Claims Raised in NRCS 2009-00210

As discussed above at p. 11, plaintiff filed a fourth EEO complaint on February 20, 2009,

*i.e.*, NRCS 2009-00210. The only claim before the court arising under NRCS 2009-00201 is plaintiff's claim that he was discriminated against when he was reassigned from the position Geographical Information System Specialist GS-0457-09 to the position Soil Conservationist, GS-0457-09. Plaintiff alleges in his amended complaint that he was discriminated against because of his race and in retaliation for his past EO actions. The undersigned will address plaintiff's racial discrimination first.[20]

A *prima facie* showing of racial discrimination under Title VII requires plaintiff to establish that: 1) he was a member of a protected class; 2) he suffered an adverse employment action; 3) he was professionally qualified for the position a the time of the action; 4) he was either replaced by a person from outside the protected class or was treated differently from similarly situated outside the protected class. *See White v. Duke Energy Ky., Inc.*, 603 Fed.Appx. 442, 446 (6th Cir. 2015)(citation omitted). To establish the last element, plaintiff must show that "all relevant aspects"of his employment situation were "nearly identical" to those of similarly-situated male employees to whom he compares himself. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)(citation omitted). To be considered similarly-situated, the employee must have to deal with the same supervisor, been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Humenny*, 390 F.3d at 906 (citation omitted). Differences in job title, responsibilities, experience, and work record also may be used to determine whether employees are similarly situated. *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004)(citation

---

[20] Plaintiff asserts that he did not meet the Agency's GIS requirements because he did not possess a B.S. in Geography is one of the two places where plaintiff specifically mentions his race. (Doc. 51, ¶ VII.54, p. 17 of 22) In his response, plaintiff asserts only that "a trier of fac[t] could find that his race or sex were motivating factors and that his reassignment and loss of duties and what is essentially a demotion was retaliatory." (Doc. 107, ¶ III.F, p. 17 of 18)

26

omitted).

As a member of a protected class (African American), plaintiff satisfies the first element required to make a *prima facie* showing of race discrimination. Moreover, the undersigned assumes for the sake of this analysis that plaintiff was qualified for the position at issue. Therefore, plaintiff satisfies the third element as well. The undersigned turns his attention next to the second and fourth elements, *i.e,* whether plaintiff was subjected to an adverse employment action and whether he was similarly situated with Bobby Mimms and Kevin Davis,[21] those whom plaintiff asserts were treated differently than he because they were Caucasian.

The evidence does not support the conclusion that plaintiff suffered an adverse employment action. The Sixth Circuit defines an adverse employment action as "a materially adverse change in the terms of [a person's] employment." *White v. Burlington N. & Santa Fe. Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)(*en banc*)(citation omitted). The United States Supreme Court defines an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits as well as the denial of a raise or promotion." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see Redlin v. Grosse Pointe Public School System*, 921 F.3d 599, 607 (6th Cir. 2019).

Plaintiff was not fired, he was not demoted, he did not incur any loss of benefits, *e.g*, a decrease in his wages or salary, he was not denied a raise or a promotion, and his new job title was not less distinguished than his old one. The evidence also shows that plaintiff did not suffer

---

[21] Apart from identifying Davis as a Caucasian who was treated differently than he, plaintiff does not mention Davis again. As noted above at p. 26, a racial discrimination claim will not lie where a plaintiff's sole factual allegation is that the party to whom he compares himself is white.

27

significantly diminished material responsibilities. Moreover, the October 28, 2007 Notification of Personnel Action that affected plaintiff's permanent reassignment to the Nashville office shows that plaintiff was reassigned from a position of "SOIL CONSVST JC" TN5555 . . . Position: 00TN5555" in the Murfreesboro office to 'SOIL CONSVST JC: TN55555 . . . . Position: 00TN5555" in he Nashville the Nashville office with no changes in pay plan, code, grade or level, step, salary, or pay basis. (Doc. 106, Ex. D)  Indeed, his permanent reassignment from the Murfreesboro office to the Nashville office  was a "lateral reassignment."  (Doc. 104, Ex. 2, p. 8 of 35)  In short, plaintiff worked in Murfreesboro as a soil conservationist, he was reassigned temporarily to the Nashville office as a soil conservationist, and his job upon permanent assignment to the Nashville was as a soil conservationist.

The evidence also does not show that plaintiff was similarly situated with Mimms and Davis. First, the evidence shows that plaintiff's reassignment to the Nashville office stemmed in part from his sexual misconduct in September 2005.[22]  There is no evidence that Mimms and Davis engaged in misconduct, similar or otherwise, nor does plaintiff allege that they did.  An employee who engages in misconduct is not similarly situated to one who has not.  *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 917 (6th Cir. 2013)(citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006)).  Second, the evidence suggests that the quality of plaintiff's work was rated as the "lowest" in GIS specialist position. (Doc. 51, ¶ IV.35.b), p. 9 of 22; Ex. 17 p. 3 of 15)  Plaintiff does not allege and show that the quality of work performed by Mimms and Davis was the same or worse as his.  Differences in performance ratings renders two employees not similarly situated.  *See*

---

[22]  As discussed above at pp. 3, 5, the initial investigation into Pittman's original complaint was inconclusive and no action was taken against plaintiff.  It was Wooten's subsequent investigation that sustained Pittman's allegation of  inappropriate conduct that resulted in plaintiff's permanent reassignment to the Nashville office.

*e.g., Gaffney v. Potter*, 345 Fed.Appx. 991, 993 (6ᵗʰ Cir. 2009). In his February 24, 2009 deposition, Mimms testified that he had been employed as a GIS specialist in the Nashville office for eighteen years at the time of the deposition, or approximately fifteen years when plaintiff was reassigned temporarily to the Nashville office. (Doc. 41, Ex. 4, lines 8-16, p. 23 of 117) Mimms also was "engaged with special projects and initiatives" (Doc. 104, Ex. 2, p. 6 of 35) There is nothing in the evidence that suggests that plaintiff was as well. "'Differences in job . . . responsibilities . . . [and] . . . experience . . . can be used to determine whether two employees are similarly situated.'" *Mencarelli v. Alfred Williams & Co.*, 656 Fed.Appx. 80, 85 (6ᵗʰ Cir. 2016)(quoting *Leadbetter*, 385 F.3d at 683, 691).

As shown above, plaintiff fails to make a *prima facie* showing of racial discrimination in connection with NRCS 2009-00210. The undersigned addresses the claim next in the context of retaliation.

The elements to make a *prima facie* showing of retaliation are set forth above at p. 15. Plaintiff's EEO activity, *i.e.*, filing NRCS 2008-0120 constitutes a protected activity and the evidence shows that defendant was aware of that activity. However, as shown above at p. 28, plaintiff was not subjected to an materially adverse action. Consequently, he fails to make a *prima facie* showing of retaliation in the context of this claim.

. . . . .

Defendant's motion for summary judgment should be granted for the reasons explained above as to those claims that are before the court arising from NRCS 2000-00210.

## IV.  CONCLUSIONS
### AND
### RECOMMENDATIONS

29

The Magistrate Judge **RECOMMENDS** for the reasons explained above that: **1)** defendant's motion for summary judgment (Doc. 98) be **GRANTED**; **2)** this case be **DISMISSED WITH PREJUDICE**; **3)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this the 23rd day of December, 2019.


/s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge

30